## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SWEET STREET DESSERTS, INC.,    :
    :
        Plaintiff,    :    Civil Action No. _____
    :
    :    JURY TRIAL DEMANDED
    v.    :
    :
BETTER BAKERY, LLC,    :
    :
        Defendant.    :
    :
    :

## VERIFIED COMPLAINT

Plaintiff, Sweet Street Desserts, Inc. ("Sweet Street"), by its undersigned counsel, hereby files this Verified Complaint seeking preliminary, and final injunctive relief, and such other relief as the Court deems appropriate, against Defendant Better Bakery, LLC ("BB"), for, among others, breach of contract, violations of the Lanham Act, common law unfair competition and misappropriation of trade secrets. In support thereof, Sweet Street asserts as follows:

### Parties

1. Plaintiff Sweet Street Deserts, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Reading, Pennsylvania.

2. Defendant Better Bakery, LLC is a California limited liability company with a principal place of business in Valencia and Santa Clarita, California.

1

## Jurisdiction and Venue

3.  Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 as the claims arise under the laws of the United States.

4.  In the alternative, jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and is between diverse citizens.

5.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claim asserted herein occurred in this District, and Defendant is subject to jurisdiction in this District.

## Background

6.  Sweet Street is in the business of research, design, manufacture, supply, and distribution of a variety of specialty baked products which are widely known for high quality, distinctiveness and excellence to both consumers and commercial purveyors of such products worldwide.  Sweet Street is among the most successful, well-known, and respected designers and suppliers of such baked goods in its industry.  Among other things, Sweet Street and its employees have been accorded wide recognition and honors for their development of baked goods of universally high quality and distinctiveness.

7.  Among the products researched, developed, manufactured, and supplied by Sweet Street are a variety of innovative baked goods, but only those which meet very high standards of quality, appeal and distinction.

8.  In or around July, 2011, Thomas Henzi ("Henzi"), a pastry chef with a background in the commercial food product business and who had previously collaborated with Sweet Street on the development of a baked individual tart shell, approached Sweet Street with a request that Sweet Street evaluate and consider working with him to further develop a distinctive pretzel sandwich for sales through Sweet Street's national and global distribution network.

9. Sweet Street agreed to work with Henzi's initial idea and proceeded to expend considerable time and resources to develop, design and refine the quality and characteristics of this new type of filled pretzel product (the "Sweet Street Pretzel Sandwich") by utilizing Sweet Street's renknowned technical and design expertise as well as presenting the product to Sweet Street's vast customer network.

10. BB, at the direction of Henzi, made an initial unsuccessful prototype for Henzi. Thereafter Sweet Street began, in the fall of 2011, to discuss the potential for BB to work with Sweet Street in connection with Sweet Street's effort to design the Sweet Street Pretzel Sandwich such that BB would benefit through assisting in the product development of Sweet Street's exclusive pretzel sandwich as well as the opportunity to manufacture the product on behalf of Sweet Street.

11. The arrangement contemplated Sweet Street's use of its industry leading expertise in product development, design and manufacturing, including Sweet Street's extensive process of product design, development and quality assurance to Sweet Street's exacting and uncompromising standards of excellence and consumer appeal as well as the presentation of the product to Sweet Street's vast global network. Sweet Street's prominence and expertise was such that the parties recognized that Sweet Street's involvement in development and perfection of the product would create a very appealing and innovative consumer product.

12. In order to protect the sharing of confidential information between Sweet Street and BB during the product development process, Sweet Street and BB, on September 28, 2011, executed a preliminary Mutual Confidentiality Agreement. Thereafter, as the collaboration between the parties continued, Sweet Street and BB entered into a superseding Confidentiality

and Non-disclosure Agreement on November 2, 2011 (the "NDA").  A true and correct copy of the NDA is attached hereto as Exhibit "A."

13.  The NDA protected the sharing of, among other things, the confidential knowledge, designs, recipes, processes, formulae and other confidential information revealed by Sweet Street during the product development steps that would be taken to successfully bring the Sweet Street Pretzel Sandwich to market.

14.  Notably, as of the date of the execution of NDA, BB explicitly admitted to Sweet Street that BB was not independently making any filled pretzel products, so that the proposal to work with Sweet Street for the design of such products was new to BB and distinct from other products being routinely made by BB.

15.  The new product, as designed by Sweet Street, was to be distinctive and innovative among competing pretzel sandwiches due to unique design features as well as the recipe used for the product.  The visual appeal of such products as were designed and developed by Sweet Street was such that they created a significantly more desirable product than prior "stuffed pretzel" products on the market. The product was intended to be designed to appealingly reveal, through a distinctive and unique angled slit on the product's surface, the contents "stuffed" inside.  Thereby, the ingredient description of the product would be secondary to the obvious appeal of seeing the actual stuffing through the top of the pretzel. The process developed by Sweet Street also was intended to involve applying "crumbs" on top of the products, whether salt, seeds, cheese crumbles or otherwise, to further add to the appeal of the open tops of the product.

16.  During the ensuing months of development after execution of the NDA, Sweet Street took numerous steps using its proprietary knowledge and expertise to design, re-design, refine and greatly amplify the quality, appeal and distinctiveness of the Sweet Street Pretzel

4

Sandwich. Pursuant to the NDA, Sweet Street shared those steps and advancements with BB as the baker of both the prototypes and contemplated eventual producer of the final product design. Sweet Street's design of the Sweet Street Pretzel Sandwich involved many improvements and changes.

17. The steps and advancements revealed by Sweet Street to BB resulted from extensive work undertaken by Sweet Street by presenting the prototypes to Sweet Street customers in Chicago, the West Coast, and the East Coast in order to develop and refine the design of the Sweet Street Pretzel Sandwich while working to achieve a consistent product prior to commercial launch.

18. Sweet Street revealed the confidential and proprietary results of this effort to BB in order to continue to develop and refine the design of the Sweet Street Pretzel Sandwich.

19. Notably, on January 24, 2012 pursuant to the product development under the NDA, Bryan Freeman, the principal of BB, explicitly acknowledged the unique aspects of Sweet Street's design and development of the Sweet Street Pretzel Sandwich and agreed in an email to Sweet Street and BB principals that "Sandy's improvements," referring to the critical consumer appeal-related design creations proprietary to Sweet Street for the Sweet Street Pretzel Sandwich, were exclusive to Sweet Street.

20. Following BB's January 24, 2012 confirmation that the development of the Sweet Street Pretzel Sandwich was exclusive to and owned by Sweet Street, the parties engaged in additional work to continue to develop the unique and exclusive product. Among other things, Sweet Street continued to develop and shared with BB confidential and proprietary information regarding the selection and positioning of "proteins" (e.g. meats and cheese) that met the exacting standards of Sweet Street in terms of high quality, taste, melting characteristics, and visual appeal.

SL1 1196466v1 107685.00001

21.  To accomplish these standards, Sweet Street shared this confidential information with BB who agreed and understood the exclusive and proprietary nature of the information in order for BB to test many alternatives in furtherance of Sweet Street's demanding and renowned standards to develop the Sweet Street Pretzel Sandwich.

22.  In connection with the product development, Sweet Street understood that BB was entitled to be compensated for the time and effort BB was devoting to assist Sweet Street with the development of the unique and proprietary Sweet Street Pretzel Sandwich.  Accordingly, Sweet Street willingly satisfied BB's invoices to Sweet Street that explicitly provided that the work BB was performing on behalf of Sweet Street in connection with the Sweet Street Pretzel Sandwich was research and development activities performed at Sweet Street's direction.  Copies of examples of the BB invoices are attached hereto as Exhibit "B."

23.  In total, Sweet Street paid BB approximately $40,000.00 for BB's research and development assistance for the unique and proprietary Sweet Street Pretzel Sandwich.  These invoices, and the payments by Sweet Street, further demonstrated BB's agreement that the research and development effort related to the Sweet Street Pretzel Sandwich was for the sole and exclusive benefit of Sweet Street.

24.  In addition, Sweet Street also paid approximately $185,000.00 for equipment that BB advised Sweet Street would be necessary for BB to utilize to manufacture the Sweet Street Pretzel Sandwich.  The equipment was purchased by Sweet Street, at the recommendation of BB, for use in manufacturing the Sweet Street Pretzel Sandwich but was to be installed at BB's premises.

SL1 1196466v1 107685.00001

25.  But for BB's representations that the equipment was necessary to manufacture the Sweet Street Pretzel Sandwich, Sweet Street would not have purchased the equipment and agreed to place the equipment in BB's factory.

26.  BB, however, never installed the equipment that it represented to Sweet Street as necessary for production of the Sweet Street Pretzel Sandwich.  Rather, BB advised Sweet Street of various reasons why it was either unable to install the equipment or, alternatively, why the equipment purchased by Sweet Street at BB's instigation was unnecessary for the production of the Sweet Street Pretzel Sandwich.

27.  Pursuant to the collaboration between the parties, BB also provided Sweet Street with numerous prototypes of the unique and proprietary Sweet Street Sandwich Pretzel. However, BB was unable to satisfy Sweet Street's requirements of consistent execution of its high level standards and quality for sale of commercial products that were communicated to BB.  With respect to the prototypes provided by BB to Sweet Street and BB's purported efforts to demonstrate its ability to produce product meeting Sweet Street's high level standards and quality, Sweet Street provided BB with confidential information regarding modifications for BB to implement in order for BB to be able to satisfactorily manufacture the Sweet Street Pretzel Sandwich.

28.  As noted above, BB invoiced Sweet Street for research and development services provided in connection with this effort thus further demonstrating that BB understood and agreed that all such work being performed was done exclusively for Sweet Street.  Moreover, on various occasions during the collaboration between the parties Sweet Street specifically confirmed with BB that the work being performed was exclusive to and owned by Sweet Street.

7

29.   However, unknown to Sweet Street during the period of the parties'
collaboration, BB developed a secret scheme to steal the distinctive and proprietary design and
product development qualities of the Sweet Street Pretzel Sandwich.  In addition, BB also secretly
schemed to begin marketing and selling a Savory Pretzel Melt knock-off product, in violation of
the NDA, the express understandings and agreement between the parties, as well as various unfair
competition and trade practice laws.

30.   Upon information and belief, BB deliberately delayed providing Sweet Street
with satisfactory examples of commercially ready Sweet Street Pretzel Sandwiches in order to,
among other things, advance its scheme to steal the distinctive and proprietary design and product
development qualities of the Sweet Street Pretzel Sandwich for its own benefit and to the
detriment of Sweet Street.

**Sweet Street Discovers Better Bakery's Knock Off Products and Passing Off Of The Sweet
Street Proprietary Design of the Sweet Street Pretzel Sandwich As Its Own**

31.   In October, 2012, Sweet Street learned for the first time that BB had begun
selling surreptitiously a knock-off of Sweet Street's product design for the Sweet Street Pretzel
Sandwich, on a large volume scale, including in numerous Sam's Clubs.

32.   Because BB had not independently developed a pretzel sandwich other than on
behalf of and in conjunction with Sweet Street's development of the Sweet Street Pretzel
Sandwich, BB improperly utilized for its own benefit and to the detriment of Sweet Street the
Sweet Street confidential information developed for the Sweet Street Pretzel Sandwich and
further utilized the unique design elements developed by Sweet Street.

33.   In October, 2012, Sweet Street also learned that BB is actively looking for and
interviewing regional food service brokers, in order to assist BB in the launch of Sweet Street's
proprietary pretzel products, as if they were BB's own products.

8

34. The knock-off produced and sold as a BB product specifically used the design elements created by Sweet Street and protected by the NDA, including but not limited to the wide top slits and numerous other design elements of the product that was developed expressly by Sweet Street, and acknowledged in writing by BB to be Sweet Street's design features.

35. Sweet Street has never authorized BB or any entity to market or sell its design of the Sweet Street Pretzel Sandwich product.

## Count I
## Breach of Contract

36. Sweet Street incorporates by reference paragraphs 1 through 35 herein.

37. Plaintiff and Defendant entered into the above referenced NDA in November of 2011, the terms of which governed the product development arrangement between the parties.

38. Pursuant to the NDA, Sweet Street fulfilled its obligations to pay BB for certain product research and design services, thereby demonstrating BB's agreement and acknowledgement that the Sweet Street Pretzel Sandwich product was a product for hire and proprietary to Sweet Street. BB invoiced Sweet Street for such research and design services, and accepted payment of approximately $40,000.00 for such services.

39. Also pursuant to that contract, BB expressly agreed in January of 2012 that the distinctive design qualities of the product-in-development belonged to Sweet Street.

40. In direct breach of its obligations, BB frustrated the development of Sweet Street's Pretzel Sandwich in an effort to utilize the confidential designs, methods, features and visual appeal of the product for its own benefit.

41. BB also breached the agreement between the parties by manufacturing and marketing a version of the Sweet Street Pretzel Sandwich in direct violation of the agreement between the parties.

SL1 1196466v1 107685.00001

42.   As a direct, proximate and foreseeable result of BB's breaches of contract, Sweet Street has been injured and damaged in an amount not yet fully determined.

## Count II
## Passing Off Under The Lanham Act, 15 U.S.C. § 1125(a)

43.   Sweet Street incorporates paragraphs 1 through 42 herein.

44.   Defendant has issued false and misleading representations of fact regarding, among other things, the source and origin of the pretzel sandwich products which Defendant has without authorization sold to the general public and specific customers, such as Sam's Clubs.

45.   The pretzel sandwich designs, features and visual appeal manufactured and marketed by BB originated with and are owned by Sweet Street.

46.   Upon information and belief, BB has asserted, among other things, that BB, rather than Sweet Street, is the source and origin of the trade dress, design features, and visual appeal of the pretzel sandwiches marketed and sold by BB.

47.   By ignoring the actual and true source and origination of the Sweet Street Pretzel Sandwiches, BB falsely and misleadingly designated and misrepresented the products as its own, rather than Sweet Street's.

48.   The false designations and descriptions are likely to cause confusion and mistake to the consumer, general public, and marketplace as to the origin and source of the Sweet Street Pretzel Sandwiches.

49.   The products misleadingly marketed by BB have traveled in interstate commerce.

50.   BB has been unjustly enriched as a direct and proximate result of its wrongful acts, and Sweet Street has suffered damages in an amount not yet fully determined.

10

51.  Sweet Street has and will continue to suffer irreparable harm unless BB's actions are enjoined by this Court.

52.  The foregoing acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

53.  BB has acted knowingly and willingly in conscious disregard of the rights of its and Sweet Street's customers, Plaintiff, and the general public.

**Count III**
**False Advertising Claim Under The Lanham Act, 15 U.S.C. § 1125(a)**

54.  Sweet Street incorporates paragraphs 1 through 53 herein.

55.  Defendant has made false and misleading statements regarding the pretzel sandwiches it has marketed by labeling and branding them as created, developed, and produced by BB.

56.  The pretzel sandwiches marketed and sold by BB were not created, developed, or produced by BB.  Rather, Sweet Street created, developed, and produced the products.

57.  BB's actions were intended to actually deceive or have a tendency to deceive a substantial portion of the intended audience included but not limited to Sweet Street's customers and the general public.

58.  Specifically, BB actually deceived its customers and others as to the nature and origin of the pretzel sandwiches it marketed and sold.

59.  BB's intentional disregard of Sweet Street's rights to the Sweet Street Pretzel Sandwich was intentional and designed to actually deceive its customers, Sweet Street' customers and potential customers, and the general public.

60.   The deception is material because it concerns the nature and quality of goods involving the reputation of the producer as well as brand recognition, all of which are likely to influence a consumer's purchasing decision.

61.   The products misleadingly marketed and sold by BB have traveled in interstate commerce.

62.   Sweet Street has been damaged by, among other things, the loss of goodwill and lost profits.

63.   BB has been unjustly enriched as a direct and proximate result of its wrongful acts, and Sweet Street has suffered damages in an amount not yet fully determined.

64.   Sweet Street has and will continue to suffer irreparable harm unless BB's actions are enjoined by this Court.

65.   The foregoing acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

66.   BB acted knowingly and willingly in conscious disregard of the rights of its customers, Sweet Street's customers and potential customers, and the general public.

**Count IV**
**Common Law Unfair Competition**

67.   Sweet Street incorporates paragraphs 1 through 66 herein.

68.   Unbeknownst to Sweet Street, BB competed with Sweet Street with respect to the Sweet Street Pretzel Sandwich.

69.   BB's actions are and were designed and calculated to falsely represent and mislead the general public and Sweet Street.

SL1 1196466v1 107685.00001

70.  Specifically, BB misled the public to believe that the pretzel sandwiches it marketed and sold were and are the product of BB when in fact they were and are the product of Sweet Street.

71.  BB has misled the public to believe that BB was the source and origin of the Sweet Street Pretzel Sandwich when, in fact, Sweet Street was the source and origin of the Sweet Street Pretzel Sandwich.

72.  BB's actions constitute unfair competition in violation of Sweet Street's rights.

73.  BB has been unjustly enriched as a direct and proximate result of its wrongful acts and Sweet Street has suffered damages in an amount not yet fully determined.

74.  Sweet Street has and will continue to suffer irreparable harm unless BB's actions are enjoined by this Court.

75.  BB has acted knowingly and willingly in conscious disregard of the rights of its customers, Sweet Street's customers and potential customers, and the general public.

**Count V**
**Unjust Enrichment**

76.  Sweet Street incorporates paragraphs 1 through 75 herein.

77.  Sweet Street has complied with all obligations owed to BB including, but not limited to, working in good faith with BB, sharing proprietary and confidential information with BB, and satisfying BB's invoices for research and development services provided by BB to and on behalf of Sweet Street.

78.  In contrast, BB has acted in bad faith by, among other things, misappropriating Sweet Streets proprietary and confidential information relating to the Sweet Street Pretzel Sandwich.

79.  The facts and circumstances of this matter demonstrate that it would be inequitable to permit BB to retain the benefits of selling pretzel sandwiches that were created for and on behalf of Sweet Street.

## Count VI
## Misappropriation of Trade Secrets

80.  Sweet Street incorporates paragraphs 1 through 79 herein.

81.  Sweet Street provided its confidential and proprietary information relating to the Sweet Street Pretzel Sandwich.

82.  Pursuant to the NDA and the understandings and agreements between the parties, BB was obligated to maintain the confidentiality of the Sweet Street confidential information relating to the Sweet Street Pretzel Sandwich and refrain from using such information for its benefit and to the detriment of Sweet Street.

83.  BB misappropriated and is using the Sweet Street confidential information relating to the Sweet Street Pretzel Sandwich for its benefit and to the detriment of Sweet Street.

84.  As a direct, proximate and foreseeable result of BB's misappropriation of the Sweet Street confidential information relating to the Sweet Street Pretzel Sandwich, Sweet Street has been damaged.

SL1 1196466v1 107685.00001

WHEREFORE, as to all counts against BB, Sweet Street respectfully requests that the Court enter judgment in its favor and award the following relief against BB:

A.  A preliminary injunction during the pendency of this action, and a permanent injunction thereafter, restraining BB, its agents, employees, attorneys, and all others in concert or participation with any of them from (1) using, offering for use, displaying the content of, or engaging in any act likely to cause confusion, mistake, or (2) misleading as to the origin and source of Sweet Street's goods, or (3) misrepresenting the nature, characteristics, or qualities thereof, or (4) otherwise marketing and/or selling the Sweet Street Pretzel Sandwich or any facsimiles thereof;

B.  Surrender of all documents in any format, and destruction of all copies of such documents, in regard to the product development engaged in on behalf of Sweet Street and for which BB was compensated by Sweet Street ;

C.  Disgorgement of BB's profits in amounts to be proven at trial;

D.  Such actual and nominal damages as may be proven as a result of BB's wrongdoing;

E.  Trebling of actual damages according to the circumstances of the case;

F.  Declaration of an exceptional case, and award of reasonable attorney's fees;

G.  Punitive damages;

H.  Interest; and

I.  Such further relief as the Court deems just and appropriate.

SL1 1196466v1 107685.00001

### Demand for Jury Trial

Sweet Street respectfully requests and demands a jury trial on all issues so triable.

STEVENS & LEE, P.C.

Dated: October 26, 2012              By: _____
Joseph Wolfson, Esquire
Attorney Id. No. 44431
620 Freedom Business Center, Suite 200
King of Prussia, PA  19406
p:  (610) 205-6019
f:  (610) 988-0808
e:  jwo@stevenslee.com

Attorneys for Plaintiff, Sweet Street Desserts, Inc.

16

## VERIFICATION

I, Sandy Solmon, hereby verify that I am President and Chief Executive Officer of Sweet Street Desserts, Inc., Plaintiff in the foregoing action, and as such am authorized to make this verification for and on behalf of Plaintiff. I have read the foregoing pleading and verify that all facts set forth therein are true and correct to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: _Oct 25/_ /12

SANDY SOLMON

SL1 1196466v1/107685.00001

# EXHIBIT A

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

1.    *Parties.* This Agreement is between SWEET STREET DESSERTS, INC. ("SS") and ~~BRIAN FREEMAN~~ and his pretzel manufacturing company ("Freeman"), ~~BETTER BAKERY LLC~~ each having the address set forth below.

2.    *Background and Purpose of Disclosure.* Each party wishes to receive certain information from the other party for the limited purpose of evaluating the suitability of entering into discussions and contemplating a joint venture relationship relating to the Savory Pretzel Project (the "Project").  Each party may disclose to the other certain confidential and proprietary technical and business information which the disclosing party ("Disclosing Party") desires the receiving party ("Receiving Party") to treat as confidential.

3.    *Description of Confidential Information.*  "Confidential Information" means any and all information of the Disclosing Party and each of its related companies (if any), which is not generally available to the public and which is commercially valuable and is related to the business of such party, including without limitation any and all: trade secrets; techniques; methodologies; methods; product specifications; volume information; manufacturing, marketing, development, financial or operations information; technical, scientific, laboratory, experimental, research or statistical data; tooling; machinery; diagrams; drawings; forecasting; business and new product plans; reports; procedures; designs; formulae; recipes; improvements; processes; customer information; records; knowledge, processes, formulas, recipes, know-how or data regardless of form disclosed by either party to the other party either directly or indirectly, whether written, oral, photographic, electronic, magnetic, computer, by inspection of tangible objects, or otherwise (including without limitation materials, records, reports, documents, prototypes, samples, plant and equipment), treated or designated by the Disclosing Party as "Confidential", "Proprietary" or some similar designation or should reasonably be understood by the Receiving Party to be confidential and proprietary.  BETTER BAKERY LLC

4.    *Agreement to Maintain Confidentiality.* SS and ~~Freeman~~ each agree to hold any Confidential Information disclosed to it in confidence, to cause its employees, agents or other third parties to hold such Confidential Information in confidence, and to use the same standard of care used to protect its own proprietary and confidential information in protecting the Confidential Information.  Neither SS nor ~~Freeman~~ shall disclose Confidential Information to others or use it for purposes other than the Project.  BETTER BAKERY LLC

CV6170

BETTER BAKERY LLC

5.      *Limited Disclosure.* ~~Freeman~~ and SS each agree to limit disclosure of Confidential Information received from the other to those employees or agents necessary for the Project.

6.      *Effective Date.*   This Agreement is effective upon execution and shall remain in effect during the existence of the Project and thereafter.

7.      *Exceptions to Confidential Information.*  Confidential Information shall not include any information which (a) was publicly available at the time of disclosure; (b) became publicly available after disclosure without breach of this Agreement; (c) was in the recipient's possession prior to disclosure, as evidenced by the recipient's written records, and was not the subject of an earlier confidential relationship with the party that disclosed such Confidential Information; (d) was rightfully acquired by the recipient after disclosure by the other party from a third party who was lawfully in possession of the information and was under no obligation to the party who disclosed such Confidential Information to maintain its confidentiality; (e) is independently developed by the recipient's employees or agents who have not had access to the Confidential Information; or (f) is required to be disclosed pursuant to judicial order or other compulsion of law, provided that the party required to disclose Confidential Information received from the other party shall provide to such other party prompt notice of such order and comply with any protective order imposed on such disclosure.

8.      *No Warranty.*  ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS".   NEITHER PARTY MAKES ANY WARRANTIES, EXPRERSS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, TIMELINESS, COMPLETENESS OR PERFORMANCE.

9.      *Return of Confidential Information.*  At any time required by either SS or Freeman, the other party shall return or destroy all documents, samples or other materials embodying Confidential Information disclosed to it by such requesting party, shall retain no copies thereof, and shall certify in writing that such destruction or return has been accomplished.

10.     *Disclaimer of Other Relationships.*  This Agreement does not create a relationship of agency, partnership, joint venture or license between the parties.  This Agreement does not obligate either party to purchase anything from or sell anything to the other party, and each party acknowledges the other party may enter into (a) other similar activities and/or (b) business relationship with third parties, provided no Confidential Information is disclosed or used by the recipient of such Confidential Information.

11.    *Governing Law*. This Agreement shall be governed by and construed in accordance with the laws of the State of Pennsylvania, without reference to conflicts of law principles. The parties hereby submit and consent to the jurisdiction of the federal and state courts of Berks County, Pennsylvania, for purposes of any legal action arising out of this Agreement.

12.    This Agreement supersedes all previous agreements between the parties regarding the Confidential Information and cannot be canceled, assigned or modified without the prior written consent of SS and ~~Freeman~~ BETTER BAKERY LLC

13.    If either party breaches the term(s) of this Agreement, the other party shall have the right to (a) terminate this Agreement and/or demand the immediate return of all Confidential Information disclosed by it; (b) recover its actual damages incurred by reason of such breach, including, without limitation, its attorneys fees and costs of suit; (c) obtain injunctive relief to prevent such breach or to otherwise enforce the terms of this Agreement; and (d) pursue any other remedy available at law or in equity. Failure to properly demand compliance or performance of any term of this Agreement shall not constitute a waiver of any party's rights hereunder.

Date:

Douglas Messinger
On Behalf Sweet Street Desserts, Inc.
722 Hiesters Lane, Reading, PA 19605

Date:
11·2·11

BEHALF of BRIAN FREEMAN BRYAN FREEMAN ON
BETTER BAKERY LLC
28230 Constellation Road
Valencia, CA 91355

3

# EXHIBIT B

# Better Bakery LLC

Better Bakery LLC
28230 Constellation Road Unit D
Valencia, CA 91355

(661)294-9882
accounting@betterbakeryco.com
http://betterbakeryco.com

## Invoice

| Date | Invoice # |
|------|-----------|
| 05/31/2012 | 5545 |

| Terms | Due Date |
|-------|----------|
| Net 10 | 06/10/2012 |

**Bill To**

Sweet Street*

| Amount Due | Enclosed |
|------------|----------|
| $4,082.98 | |

Please detach top portion and return with your payment.

| Ship Date | Tracking # | Shipped Via |
|-----------|-----------|-------------|
| 05/31/2012 | various | Fed Ex |

| Item # | Activity | Quantity | Rate | Amount |
|--------|----------|----------|------|--------|
| Melt R&D | • Research & Development for Melt Product - Insulated Shippers & Ice Packs | 1 | 282.75 | 282.75 |
| Melt R&D | • Research & Development for Melt Product - Ingredients | 1 | 1,225.22 | 1,225.22 |
| Melt R&D | • Research & Development for Melt Product - Labor, Workers Comp, Employer taxes | 1 | 2,537.20 | 2,537.20 |
| Melt R&D | • Research & Development for Melt Product - Trays, labels, & ink | 1 | 37.81 | 37.81 |

| | Total | $4,082.98 |
|---|-------|-----------|

**BETTER BAKERY CO**
**RESEARCH & DEVELOPMENT**
**SUMMARY FOR MAY 2012**

| | | |
|---|---|---:|
| Insulated Shippers & Ice Packs | $ | 282.75 |
| Ingredients - dough, fillings & toppings | $ | 1,225.22 |
| labor, workers comp, employer taxes | $ | 2,537.20 |
| Melt trays, labels, & ink | $ | 37.81 |
| **Total R&D Balance due for May 2012** | **$** | **4,082.98** |

# Better Bakery LLC

Better Bakery LLC
28230 Constellation Road Unit D
Valencia, CA 91355

(661)294-9882
accounting@betterbakeryco.com
http://betterbakeryco.com

## Invoice

| Date | Invoice # |
|------|-----------|
| 06/30/2012 | 5584 |

| Terms | Due Date |
|-------|----------|
| Net 14 | 07/14/2012 |

**Bill To**

Sweet Street*

| Amount Due | Enclosed |
|------------|----------|
| $3,049.07 | |

Please detach top portion and return with your payment.

| | Ship Date | Ship Via |
|--|-----------|----------|
| | 06/30/2012 | Fed Ex |

| Item # | Activity | Quantity | Rate | Amount |
|--------|----------|----------|------|--------|
| Melt R&D | • Research & Development for Melt Product – Insulated Shippers & Ice Packs | 1 | 710.06 | 710.06 |
| Melt R&D | • Research & Development for Melt Product – Ingredients | 1 | 1,067.36 | 1,067.36 |
| Melt R&D | • Research & Development for Melt Product – Labor, workers comp & taxes | 1 | 1,180.90 | 1,180.90 |
| Melt R&D | • Research & Development for Melt Product – Melt trays, labels, & ink | 1 | 90.75 | 90.75 |

| | Total | $3,049.07 |
|--|-------|-----------|

**BETTER BAKERY CO**
**RESEARCH & DEVELOPMENT**
**SUMMARY FOR JUNE 2012**

| | | |
|---|---|---:|
| Insulated Shippers & Ice Packs | $ | 710.06 |
| Ingredients – dough, fillings & toppings | $ | 1,067.36 |
| labor, workers comp, employer taxes | $ | 1,180.90 |
| Melt trays, labels, & ink | $ | 90.75 |
| Total R&D Balance due for June 2012 | $ | 3,049.07 |

# Better Bakery LLC

Better Bakery LLC
28230 Constellation Road Unit D
Valencia, CA  91355

(661)294-9882
accounting@betterbakeryco.com
http://betterbakeryco.com

## Invoice

| Date | Invoice # |
|------|-----------|
| 07/31/2012 | 5585 |

| Terms | Due Date |
|-------|----------|
| Net 14 | 08/14/2012 |

**Bill To**

Sweet Street*

| Amount Due | Enclosed |
|------------|----------|
| $2,815.55 | |

Please detach top portion and return with your payment.

| | | Ship Date |
|--|--|-----------|
| | | 07/31/2012 |

| Item # | Activity | Quantity | Rate | Amount |
|--------|----------|----------|------|--------|
| Melt R&D | • Research & Development for Melt Product – insulated shippers & ice packs | 1 | 616.90 | 616.90 |
| Melt R&D | • Research & Development for Melt Product – Ingredients | 1 | 1,003.82 | 1,003.82 |
| Melt R&D | • Research & Development for Melt Product – labor, workers comp, employer taxes | 1 | 1,109.12 | 1,109.12 |
| Melt R&D | • Research & Development for Melt Product – melt trays, labels, & ink | 1 | 85.71 | 85.71 |
| | | | Total | $2,815.55 |

BETTER BAKERY CO
RESEARCH & DEVELOPMENT
SUMMARY FOR JULY 2012

| | | |
|---|---|---|
| Insulated Shippers & Ice Packs | $ | 616.90 |
| Ingredients - dough, fillings & toppings | $ | 1,003.82 |
| labor, workers comp, employer taxes | $ | 1,109.12 |
| Melt trays, labels, & ink | $ | 85.71 |
| Total R&D Balance due for July 2012 | $ | 2,815.54 |

# Better Bakery LLC

Better Bakery LLC
28230 Constellation Road Unit D
Valencia, CA 91355

(661)294-9882
accounting@betterbakeryco.com
http://betterbakeryco.com

## Invoice

| Date | Invoice # |
|---|---|
| 08/31/2012 | 5586 |

| Terms | Due Date |
|---|---|
| Net 14 | 09/14/2012 |

**Bill To**

Sweet Street*

| Amount Due | Enclosed |
|---|---|
| $2,714.19 | |

*Please detach top portion and return with your payment.*

| | Ship Date | Ship Via |
|---|---|---|
| | 08/31/2012 | Fed Ex |

| Item # | Activity | Quantity | Rate | Amount |
|---|---|---|---|---|
| Melt R&D | • Research & Development for Melt Product - insulated shippers & ice packs | 1 | 667.55 | 667.55 |
| Melt R&D | • Research & Development for Melt Product - ingredients | 1 | 906.54 | 906.54 |
| Melt R&D | • Research & Development for Melt Product - labor, workers comp, employer taxes | 1 | 1,051.87 | 1,051.87 |
| Melt R&D | • Research & Development for Melt Product - melt trays, labels, & ink | 1 | 88.23 | 88.23 |
| | | | **Total** | **$2,714.19** |

**BETTER BAKERY CO**
**RESEARCH & DEVELOPMENT**
**SUMMARY FOR AUGUST 2012**

| | | |
|---|---|---|
| Insulated Shippers & Ice Packs | $ | 667.55 |
| Ingredients - dough, fillings & toppings | $ | 906.54 |
| labor, workers comp, employer taxes | $ | 1,051.87 |
| Melt trays, labels, & ink | $ | 88.23 |
| Total R&D Balance due for August 2012 | $ | 2,714.19 |